Nancie H. Kespohl, Plaintiff, v. The Northern Trust Company, as Trustee, etc., et al., Defendants.

Petition of Mural J. Winstin To Enforce Attorney's Lien Against Nancie H. Kespohl, Individually and as Co-Executor of the Estate of Julius Kespohl, The Northern Trust Company, Trustee Under Trust Created by Julius Kespohl and Dated September 12, 1944, The State Street Bank and Trust Co., Executor and Trustee, and Albert S. Long.

Mural J. Winstin, Petitioner-Appellee, v. Nancie H. Kespohl, Respondent-Appellant, Madeleine, Johnson, Executor of the Will of Albert S. Long, Deceased, Appellant.

**Gen. No. 51,227.**

First District, Third Division.

March 21, 1968.

Rehearing denied April 16, 1968.

Yowell and Cessna, of Chicago (John T. Yowell and G. Kent Yowell, of counsel), for appellants.

Mural J. Winstin, pro se, of Chicago, appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a summary judgment allowing the petition of Mural J. Winstin (Petitioner) for the enforcement of an attorney's lien for services rendered under a contingent fee contract made with Nancie H. Kespohl (Respondent). The contract dated June 3, 1955, provided that Winstin and two other attorneys, Elmer S. Leesman and Albert S. Long, both now deceased, were to represent the respondent in proceedings involving the estate of her late husband Julius Kespohl and the validity of a trust created by him. Their fee was contingent upon the successful conclusion of the proceedings and was based on a percentage of the excess over that which she would have otherwise received. Respondent filed an answer to the petition. Her principal defense is that the

death of two of the contracting attorneys rendered performance by all three attorneys impossible and that therefore the contract was void.

Julius Kespohl died in October 1953. The greater portion of his property was held in a trust created by him pursuant to an agreement with The Northern Trust Company as trustee. The respondent was named as a beneficiary of the trust, but only to the extent of $9/10$ ths of $1/40$ th part thereof, the value of which portion was $4,341.36. The respondent was dissatisfied and procured the legal services of Long and Leesman. They in turn asked the assistance of Winstin. Winstin agreed to assist in the litigation upon condition that the respondent would enter into a definite contingent fee contract. She agreed, and on June 3, 1955, the contract in question was executed by herself and her three attorneys. Under the agreement the attorneys were to prosecute a suit in Cook County to have the trust annulled and set aside as to the respondent. In addition they were to proceed with a claim against the estate in Adams County, Illinois, where the will of Kespohl had been admitted to probate. Respondent agreed to pay her attorneys 45% of the value of any improvement in her share of the trust property effected after June 3, 1955, whether derived from the trust or from the assignment or release of any interest in the trust whether or not resulting from a decree, judgment or order or in compromise or settlement. The contract further provided that if the attorneys were not successful in the proceedings with respect to the trust, but were successful in establishing an interest against the estate in the probate proceedings pending in Adams County, the respondent was to pay them $15,000 at the rate of $1,500 a year. Otherwise they were to receive nothing. In the event of a dispute between the parties as to the amount or any other matter relating to compensation under the contract, it was agreed that the dispute should

be determined by the Chief Justice of the Superior Court of Cook County. Such determination was to be final and not appealable.

One of the attorneys, Elmer S. Leesman, died on July 26, 1959, about five years prior to the termination of the proceedings in the Superior Court of Cook County. On April 24, 1964, twelve days prior to the entry of the final order in the suit against the trustee (the litigation then having been pending more than nine years) Long withdrew his appearance as one of the contracting attorneys and entered an appearance as a member of the firm of Yowell, Long, McDonald and Yowell. The change was made without the consent of Winstin, but with the consent of the client.

On May 6, 1964, an order was entered in the Superior Court declaring Nancie Kespohl to be the lawful widow of the testator and nullifying the trust agreement as to her. The court directed the trustee to pay to her one-half of the principal and interest of the trust fund. This increased her share from $4,341.36 to $149,039.46.

Winstin filed a petition with the Chief Justice pursuant to the clause of the contract before mentioned, to determine the compensation due the attorneys. A conference was held for that purpose, at which Long and Winstin agreed to pay Leesman's widow $3,000 in discharge of any claim for services rendered by Leesman prior to his death. While this matter was pending, Long died and about three months after his death the court entered the following order:

> "That Nancie H. Kespohl pay to Mural J. Winstin and the Estate of Albert S. Long, deceased, 45% of the value of the improvement in her estate, interest or right derived from said living trust; and that 22½% of the 45% be paid to Winstin and 22½% of the 45% be paid to the estate of Albert S. Long, deceased."

The order further provided that Winstin and Long each pay $1,500 to Leesman's widow. The provisions of the order were not satisfied and thereupon Winstin instituted these proceedings. Summary judgment was entered on the petition for the enforcement of the attorney's lien, and determination of the compensation before set out was reaffirmed by the court. Thereupon this appeal was taken.

The first point to be considered is whether a valid lien was created in favor of the contracting attorneys. The Attorney's Lien Act, Ill Rev Stats, c 13, § 14 (1967) provides as follows:

> "Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or agreement, for a reasonable fee, for the services of collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients . . . and such lien shall attach to any verdict, judgment or decree entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice."

 Respondent contends that the contract for a contingent fee did not amount to an equitable assignment of any portion of her interest in the trust fund. Her counsel's theory appears to be that an attorney's lien cannot be perfected unless the underlying contract for services contains language of assignment in favor of the attorney. We do not consider such language to be essential. The attorney's lien is a creature of statute and the Act does not require an assignment of the client's claim as a prerequisite for the attachment of the lien.

The respondent cites Reuben v. Katz, 12 Ill App2d 474, 139 NE2d 824 (Abst.) for the proposition that an attorney is not entitled to a lien against property gained on behalf of a client when the legal services rendered consisted of defending the client's status as a surviving spouse. In that case the decedent's second wife retained an attorney to prove that she had been legally married to the decedent and to enforce her rights as a surviving spouse. The marriage between the plaintiff Rhea Reuben and the decedent had been celebrated three days prior to the entry of the divorce decree terminating the decedent's prior marriage. Counsel succeeded in having the date of the divorce decree entered nunc pro tunc as of the day preceding the second marriage, thus validating the marriage between Rhea Reuben and the decedent. Thereafter a settlement was reached and the plaintiff was accorded 21% of the net estate. The plaintiff's attorney notified the administrator of his contingent fee contract with the plaintiff, and thereupon the administrator petitioned the Probate Court for instructions with respect to the payment of the fee. The sole question raised on appeal was whether the Probate Court had jurisdiction to adjudicate a controversy between an heir of an estate and an outside party. The attorney contended that he had a lien against the plaintiff's share of the estate and that the Probate Court should adjudicate his rights therein as a claim against the estate. The court held that the attorney was not entitled to a lien on the estate property. The court reasoned that counsel's services consisted only of defending the plaintiff's status as a surviving spouse, and although the plaintiff became entitled to certain property upon proving herself to be the decedent's widow, counsel had not recovered property or money in her behalf.

Although the facts in the Reuben case are in some respects similar to those in the case before us, the legal question raised and the services rendered differ significantly. In Reuben the attorney merely obtained an

216

order which in effect validated the plaintiff's marriage to the testator. No direct recovery of money or property was accomplished by the action. In the instant case the suit was against a trustee and the purpose was to have the trust declared invalid and to procure for the plaintiff a share of the property which constituted the corpus of the trust. The plaintiff's marital status as the widow was placed in issue by the trust company and was met by her as a preliminary condition. The court in its decree found that she was the widow, saying:

> "The court further finds that, to contest the right of the plaintiff to maintain this action, the defendants have attacked the status of the plaintiff as the wife and widow of the said Julius Kespohl. . . . The defendants have not sustained their allegations that the plaintiff was not the wife and is not the widow of Julius Kespohl and . . . the plaintiff has sustained the allegation of her complaint that she was the wife and is the widow of Julius Kespohl . . ."

Mrs. Kespohl could not have prevailed in her suit against the trust company merely by proving that she was the widow of the decedent. The final decree in that suit recites that the defendant intended the trust to be testamentary; that it was not executed in conformance with the provisions of the Statute of Wills; that the transfer of the property to the trust was an evasion of the Statute of Wills and therefore it was illusory and invalid against the plaintiff. A widow suing in a personal injury or dramshop case for damages as a result of her husband's death might well be put to proof of widowhood, but that would not make a case for her. The distinction between the instant case and Reuben v. Katz, supra, is obvious.

We proceed to consider the contention that the duties of the contracting attorneys were personal and nonassignable and that the deaths of Leesman and Long terminated the contract. The respondent relies on Baxter v. Billings,

83 F 790 (8th Cir). In that case two women employed attorneys named Baxter and Yonley under a written contract which provided that they would receive 50% of the net proceeds of a suit. Thereafter Yonley died, and Baxter with the consent of the clients became associated with other lawyers, filed a suit and obtained a judgment for the clients. Shortly before this, Baxter notified the defendants that by virtue of the written contract he claimed a lien on the interest of the clients in the suit he had instituted. The court denied the enforcement of Baxter's lien on the ground that the performance rendered by attorneys not parties to the contract was an unacceptable substitute for the services for which the clients had contracted. The court compared the contingent fee contract for legal services with a contract with an author to write a book and said (p 791):

> "An agreement with a lawyer to commence and prosecute a suit is of the same character as a contract with an author to write a book. If the author dies, or abandons his work when it is half written, no substitute or successor can complete the book, and recover its price, because the literary ability of the original author, for the use of which the publisher contracted, has not been, and could not be, applied to it."

One need only observe the dramatic increase in law firm personnel to see how far we have departed from this picture of the individual lawyer. A recent survey reveals that the nation's twenty largest law firms vary in size from 106 to 169 members; that many other firms range in size from 30 to 100 partners and associates and the personnel within such offices fluctuates almost daily with the ebb and flow of accretion and attrition. "Why Law Is a Growth Industry," Business Week, January 13, 1968, p 78. Baxter v. Billings, supra, and its analogy is ancient and outmoded.

In Morgan v. Roberts, 38 Ill 65 (1865), also cited by the respondent, the court found that four attorneys retained jointly to prosecute a suit abandoned their contingent fee contract and were thereby foreclosed from enforcing its terms against the client. The court observed that "there is strong presumption from the record that all the attorneys acquiesced in the abandonment of the case, as not one of them was known to move in the case after the second verdict was set aside." The attorneys in the instant case did not abandon the case.

When Leesman died in 1959 Mrs. Kespohl did not undertake to rescind the contract, but on the contrary allowed the surviving attorneys to continue with the prosecution of the litigation. The Superior Court suit was successfully concluded in May 1964 by the surviving attorneys. During this five-year period Mrs. Kespohl neither said nor did anything inconsistent with the continuance of the contract. Twelve days prior to the entry of the favorable decree Long withdrew his appearance but entered a new appearance for Mrs. Kespohl in the name of his firm and together with Winstin completed the litigation. Mrs. Kespohl may not now complain that she was deprived of the skills and personal services for which she contracted.

The petitioner was entitled to an attorney's lien and properly proceeded to enforce that right as prescribed by statute. Ill Rev Stats, c 13, § 14 (1967).

The decree is affirmed.

Decree affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.